IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANTONARI W. ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20-cv-00450 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| C/O MESSER, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |         United States District Judge |
| Defendants. | ) | |

Antonari W. Alexander ("Alexander" or "Plaintiff"), a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights in the course of, or in their subsequent responses relating to, an incident that occurred on July 12, 2018, during which Defendant Correctional Officer Messer allegedly assaulted Alexander at Red Onion State Prison ("Red Onion"), a facility operated by the Virginia Department of Corrections ("VDOC"). This matter is before the court on a motion for summary judgment filed by Messer and co-defendants Correctional Officer J. Mullins,[1] Warden Jeffrey Kiser,[2] and Assistant Warden Shannon Fuller.[3] After reviewing the record, the court will grant defendants' motion for summary judgment.

---

[1] Alexander alleges that Mullins assisted Messer in putting Alexander "on [his] face" after the initial assault.

[2] Alexander's complaint identifies a single defendant named "Kiser-Fuller." Counsel for defendants interprets this as an amalgamation of the names of Warden Kiser and Assistant Warden Fuller. The court accepts counsel's interpretation as to the identity(ies) of this defendant. The Clerk is thus DIRECTED to update the docket to reflect that the defendant "Kiser-Fuller" is actually two defendants: Warden Jeffrey Kiser and Assistant Warden Shannon Fuller.

[3] Alexander's complaint also names a fifth defendant, Lt. Boyd. Boyd has not entered an appearance. In view of the analysis herein, Alexander's complaint will be dismissed in its entirety, including claims against Boyd.

## I.

In his lengthy complaint, Alexander enumerates 33 separate "claims" related to the alleged assault of July 12, 2018, as well as alleged events and motives that precipitated the alleged assault (such as reprisal and retaliation), and various forms of retaliation and/or inadequate responses that allegedly followed the assault. Many of these alleged events involved persons other than Messer or Mullins. Alexander alleges supervisory liability claims against Kiser and Fuller. But undisputed facts regarding Alexander's grievance history, as detailed below, are determinative as to his claims.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is more colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). But the non-

moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

A. <u>Failure to Exhaust: Legal Requirements</u>

Defendants argue that Alexander failed to exhaust available administrative remedies before filing his action, as required by 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 19, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 171, 725 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aguilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

B. <u>Failure to Exhaust: VDOC Requirements</u>

In support of their motion for summary judgment, defendants submit the affidavit of Human Rights Advocate (and grievance records custodian) T. Trapp, along with VDOC Offender Grievance Procedure, Operating Procedure ("OP") 866.1. OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. Human Rights Advocate Trapp explains that the grievance process provides corrections staff a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. There is no dispute that the substantive grounds for Alexander's claims are grievable under OP 866.1.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to informally resolve his complaint. According to OP 866.1, this good-faith effort generally must be documented using an informal complaint. Once an inmate files an informal complaint, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days of receipt of the informal complaint, staff should respond to the informal complaint. If an inmate is not satisfied with the response to the informal complaint, he may file a regular grievance. If prison officials do not provide a response within 15 days of the informal complaint being logged, the inmate may proceed to filing a regular grievance and must attach the receipt of the informal complaint to the grievance as documentation of his attempt to resolve the issue informally. The inmate is responsible for submitting the informal complaint in a timely manner to allow time for staff to respond within the period allowed to file a regular grievance.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day that they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and receipt is issued to the inmate within two working days. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days from the date it is received with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. The time limit for issuing a Level I response is 30 days, 20 days for a Level II response, and 20 days for a Level III response. Expiration of the time limit (including any authorized continuances) without issuance of a response at any stage of the process automatically qualifies the grievance for appeal to the next level.

C. Failure to Exhaust: Analysis

In her affidavit, Trapp states that she has thoroughly reviewed Alexander's grievance history for allegations that correctional officers used excessive force against him on July 12, 2018, by attacking him and slamming his face, head, and body against a wall. According to Trapp, Alexander did not submit any relevant informal complaints or regular grievances, no such grievances were accepted or rejected, and Alexander did not submit any emergency grievances. Having failed to initiate any form of a relevant grievance, Alexander did not exhaust his administrative remedies.

Alexander filed an oblique and conclusory response, in which he alleges discussions about "every 'incident'" with Kiser and Fuller, that video has been saved, that intel officers are witnesses, and that medical saw him several days after the incident. Alexander thereafter filed a motion for preliminary injunction, to which Alexander attached over a hundred pages of various prison records.

The court has examined Alexander's submissions for evidence of a relevant grievance, and has found nothing to establish a genuine issues of material fact in his favor. Only a handful of grievance records submitted by Alexander appear to fall within the relevant time frame. On July 23, 2018, Alexander filed an informal grievance in which he complained that he had fallen out of bed on November 14, 2016, and had injured his head, neck, spine, and shoulders; and suffered two seizures. He also raised an informal grievance about the unsafe condition of his bed had not been corrected with guardrails. But the falling-out-of-bed incident of November 2016—and the bed guardrails—are not relevant to Alexander's claims in this lawsuit. In July 2018, Alexander grieved the manner in which a strip search had been conducted on June 29, 2018. This topic is also clearly irrelevant to this lawsuit.

The other grievance records submitted by Alexander are from a later time frame—generally, 2019 and early 2020—and none of them relate to the events alleged in his complaint. These grievance records include: (1) an exhausted grievance from late 2019 and early 2020, in which Alexander complains of his placement in long-term segregation; (2) a grievance from April 2019 that Alexander's reentry goals are not being met and he is not being rehabilitated; (3) an informal complaint from July 2019 that Alexander was not assigned to a job; (4) an exhausted grievance from February 2019 that Alexander had been denied a shower on

December 21, 2018; (5) a rejected grievance from January 2019 alleging unprofessionalism and retaliation by Unit Manager Collins, because of Alexander's cell assignment; (6) records of several grievances from November and December 2019, complaining of an alleged assault, which is the subject of Alexander's separate lawsuit,[4] that Captain Franklin racially discriminated against Alexander, and that officials failed to provide adequate medical care; and (7) grievance records from November and December 2019, complaining that Collins slammed Alexander on his face and then walked right past Alexander when Alexander tried to speak with Collins about Alexander's severe pain after excessive force used by Collins's staff.

Alexander's remaining grievance submissions include: (1) requests for medical attention; (2) a request addressed to a hearing officer; (3) a disciplinary record from December 2019; (4) medical records from January 2020; (5) an investigation report regarding an incident that occurred on April 15, 2017, wherein Alexander assaulted Correctional Officer Maloney; (6) medical records from 2014; (7) various court records from other cases; (8) educational certificates; and (9) other disciplinary records and correspondence.

Based on this detailed review of the parties' grievance submissions, the court concludes that Alexander did not timely or properly initiate or exhaust any formal grievance regarding the alleged assault of July 12, 2018, nor any alleged events that allegedly followed from it. There is no indication that Alexander's failure to exhaust was the result of any action or inaction on the part of prison officials. For these reasons, the court will enter summary judgment in favor of defendants. Alexander's complaint will be dismissed in its entirety,

---

[4] Some of the grievance records that Alexander has entered into the record of this lawsuit, appear to relate to a separate incident of alleged excessive use of force, which is the subject of a separate lawsuit filed by Alexander. *See Alexander v. Clarke*, No. 7:19-cv-00784 (W.D. Va.)

including his claims against Boyd, because according to the court's review of the submissions already presented, Alexander has equally failed to exhaust his administrative remedies with respect to any defendant.

### IV.

For the reasons stated, the court will grant defendants' motion for summary judgment.

The clerk shall send copies of this memorandum opinion and the accompanying order to the parties.

**ENTERED** this 30th day of September, 2021.

        */s Thomas T. Cullen*
        HON. THOMAS T. CULLEN
        UNITED STATES DISTRICT JUDGE